UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-345(RMU)** |
| | : | |
| v. | : | |
| | : | |
| **CHRISTOPHER FORD,** | : | |
| | : | |
| Defendant. | | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS PHYSICAL EVIDENCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby opposes Defendant's Motion to Suppress Physical Evidence. In support of its Opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at any hearing on this issue:

FACTUAL BACKGROUND

1.      The defendant, Christopher Ford, was charged in a one-count Indictment with Unlawful Possession with the Intent to Distribute 100 grams or More of Phencyclidine, also known as PCP, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iv).[1]

2.      The government believes its evidence will show that on November 13, 2007, members of the Metropolitan Police Department's Narcotics and Special Investigations Division (NSID) and the Federal Bureau of Investigation were conducting a joint narcotics operation within the Sixth District. During the course of that operation, Officer James Boteler met with a

---

[1] The subsequent DEA analysis concluded that the actual amount of Phencyclidine was 94.5 grams. Thus, the government will be proceeding on the lesser-included charge of Possession with the Intent to Distribute Phencyclidine, also known as PCP, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iv).

paid confidential informant (CI). The CI had provided reliable information on over fifty occasions that had led to the recovery of both illegal narcotics and numerous firearms, and the CI had never provided false information while working with NSID.

3.   The CI advised Officer Boteler that it had personal knowledge that an individual it knew by the nickname "Fat Nasty" was in possession of a large amount of PCP. The CI told Officer Boteler that it personally observed "Fat Nasty" occupying a silver Cadillac with District of Columbia license plate number CM3267 that was parked at the intersection of 45th Street and Douglas Street, N.E., Washington, D.C., which the officers knew to be a location with frequent illegal drug and weapon activity. The CI told Officer Boteler that it also observed "Fat Nasty" place a tan-colored shoe box containing vials of PCP into the trunk of the Cadillac. FBI Special Agents responded to 45th and Douglas Streets, N.E., and immediately observed the vehicle, a silver 1994 Cadillac Deville with license plate number CM3267, parked across from 4449 Douglas Street, N.E.[2]

4.   At approximately 2:40 p.m., FBI Special Agents William Grover and John Nagashima met with the CI and they drove to the area in an unmarked undercover law enforcement vehicle. As they drove through the area, the CI saw "Fat Nasty" standing by the silver Cadillac. The CI identified "Fat Nasty" to the agents and told them that it had seen "Fat Nasty" selling PCP from the Cadillac earlier that day. Special Agent Grover drove slowly past the Cadillac and looked directly at "Fat Nasty," who was subsequently identified as the defendant, Christopher Ford. Special Agent Grover then drove out of the area.

5.   After dropping off the CI, Special Agent Grover picked up Special Agent Tom

---

[2] The Cadillac is registered to an individual who is currently wanted for failure to appear for a status hearing on a possession of cocaine charge.

Ryan and the three agents then drove back to 45th and Douglas Streets.  They arrived in the area approximately thirty to forty-five minutes after they had dropped off the CI and observed the defendant standing at the open trunk of the Cadillac speaking with two women.  The agents pulled up next to the Cadillac and got out of their car.  They approached the defendant and immediately smelled the strong odor of Phencyclidine (PCP) coming from the open trunk of the silver Cadillac and from the defendant himself.  Special Agent Grover also saw several shoe boxes in the open trunk.  The agents handcuffed the defendant and told him they were going to search the trunk of the Cadillac.  The defendant then turned and ran down street with his hands cuffed behind his back.  Special Agents Nagashima and Ryan chased the defendant for approximately two blocks and caught him in the 4400 block of Quarles Street, N.E. without further incident.

      6.      While the other agents chased the defendant, Special Agent Grover stayed by the Cadillac and opened a tan shoe box that was lying on the right side of the trunk.  Grover opened the box and recovered 28 half-ounce glass vials each containing a yellowish liquid with a strong chemical odor consistent with Phencyclidine (PCP) and an empty Gatorade bottle also with a strong chemical odor consistent with Phencylidine (PCP). A subsequent DEA analysis confirmed that the gross weight of the vials and their contents was 2278 grams and that the amount of actual Phencyclidine Base was 94.5 grams.  That amount of PCP would have an average street value of approximately $29,000.  The Gatorade bottle contained no controlled substance.

      7.      A further search of the Cadillac resulted in the recovery of Court Services & Offender Supervision (CSOSA) paperwork for Christopher Ford in both the center console arm rest and the driver's side door map pocket of the Cadillac, photographs of the defendant, and a Virgin Mobile Cellular Phone.  Two pay stubs with Christopher Ford's name were recovered

from underneath the shoe box containing the PCP.  Finally, search incident to arrest of Ford resulted in the recovery of $1,080.

## ARGUMENT

8. The defendant argues that the evidence must be suppressed because "[t]he police had no basis to search the defendant and he did not consent to the search of her [sic] person or her [sic] car;" "the arrest and search of the defendant were not based on probable cause;" and "[t]he search of the defendant was conducted without a warrant." Def's Mot. at 2.  For the reasons discussed below, the defendant's arguments are meritless and his motion should be denied.

9. In this case, under the totality of circumstances analysis of Illinois v. Gates, 462 U.S. 213, 230-32 (1983), the NSID officers and agents had probable cause to arrest the defendant at the time they approached the Cadillac.  See United States v. Riley, 351 F.3d 1265 (D.C. Cir. 2003) (holding that police had probable cause to arrest defendant based on reliable informant's tip, and confirmation of innocent details).  The NSID officers and agents had received a tip from a confidential informant who had provided information to them over fifty times previously that had been error-free, and that had led to arrests for narcotics and weapons offenses.  The CI, who receives money for the information he provides and thus has a monetary interest that would be adversely affected if he gave false information, provided the police with detailed information that an individual it knows as "Fat Nasty," who was later pointed out by the CI and identified as the defendant, was in a silver Cadillac with District of Columbia license plate number CM3267 in the vicinity of 45th and Douglas Streets, N.E., which is an area known for drug and weapons offenses.  The CI further told the officers and agents that it had seen "Fat Nasty" put a tan colored box containing numerous glass vials of suspected PCP into the trunk of that vehicle and

had seen "Fat Nasty" selling PCP from that vehicle earlier in the day. When the agents drove to that location, they saw the vehicle exactly where the CI said it would be, and then they confirmed the information further by driving the CI into the neighborhood to see if it could identify the person and the car, which it did. Thirty to forty-five minutes later when agents returned, the defendant was out of the silver Cadillac with the rear trunk fully open, speaking to two women. Based on the detailed information provided by the informant, the corroboration of that information to include the CI's subsequent identification of both the vehicle and the person, the long association with the paid CI who had provided error-free information in over fifty cases which had led to arrests, the agent's view of the shoe boxes that were visible in the open trunk, and the strong smell of suspected PCP, the police had probable cause to arrest the defendant and thus the search of the vehicle was proper. Riley, 351 F.3d at 1268-69.

    10.    Even assuming *arguendo* that the Court determines that the agents did not have probable cause to arrest the defendant when they first approached him, they clearly had a reasonable suspicion that developed into probable cause. Under Terry v. Ohio, 392 U.S. 1 (1968), the police may stop an individual where there is a reasonable, articulable suspicion that criminal activity is afoot. "A detailed tip from a known confidential informant creates such a reasonable articulable suspicion." United States v. Conyers, 118 F.3d 755, 757 (D.C. Cir. 1997) (citing Adams v. Williams, 407 U.S. 143, 146–47 (1972)); see also Alabama v. White, 496 U.S. 325, 326-27 (1990) (holding that anonymous tip was sufficiently corroborated for investigative stop of defendant). Moreover, "[a]n officer may take whatever steps are reasonably necessary to prevent a subject from fleeing during the course of an investigative stop." Id. (holding that detaining officers' action in pulling cruiser in front of Conyers' car and approaching with weapon drawn during stop was not unreasonable). Finally, "[h]eadlong flight - wherever it

occurs – is the consummate act of evasion. It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such" and can be considered in determining whether an officer had reasonable suspicion. Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000).

11.     In addition to the detailed information provided by a known, reliable informant and the corroboration of that information, as the agents made contact with the defendant, Special Agent Grover could see several shoe boxes in the open trunk and immediately detected a very strong chemical odor consistent with that of phencyclidine (PCP) emanating from the defendant's person, and from the open trunk area of the Cadillac. Not only did these observations further corroborate the information provided by the CI, but they also provided the agents with probable cause to arrest the defendant and to search the vehicle. United States v. Turner, 119 F.3d 18, 20 (D.C. Cir. 1997) (smell of burnt marijuana emanating from car, along with pieces of torn cigar paper and zip of green weed gave officers probable cause and supported search of vehicle, including trunk); see also United States v. Ross, 456 U.S. 798 (1982) (holding that where officers have probable cause to believe that vehicle contains contraband, they may search it as thoroughly as if magistrate had authorized the search by warrant); United States v. Nielsen, 9 F.3d 1487, 1491 (10th Cir. 1993) (noting smell of marijuana is sufficient to establish probable cause to search, while noting that corroboration for a "human sniffer" is important where officer has incentive to find evidence of illegal activities); United States v. Reed, 882 F.2d 147 (5th Cir. 1989) (smell of marijuana "in itself" supported search of entire vehicle); United States v. Baylor, 2006 WL 3146348 (D. Kan. October 31, 2006) (denying motion to suppress where officer smelled faint odor of marijuana on defendant's person, and noting where no marijuana ultimately found that the "distinct odor of burnt marijuana, by itself, coming from the window of a stopped vehicle will provide probable cause to search a vehicle").

WHEREFORE, for the reasons stated above, the United States respectfully requests that this Court deny the Defendant's Motion to Suppress Physical Evidence.

                                        Respectfully submitted,

                                        JEFFREY A. TAYLOR
                                        United States Attorney

                                        /s/
                                        Jean W. Sexton
                                        Assistant United States Attorney
                                        NJ Bar No. 02122-1995
                                        555 4th Street, N.W.  #4235
                                        Washington, DC 20530
                                        (202) 305-1419; Fax: 514-6010
                                        Jean.Sexton@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-345(RMU)** |
| | : | |
| v. | : | |
| | : | |
| **CHRISTOPHER FORD,** | : | |
| | : | |
| **Defendant.** | | |

**ORDER**

Upon consideration of the Defendant's Motion to Suppress Physical Evidence and the Government's Opposition thereto, it is this _____ day of January, 2008,

ORDERED, that the Defendant's Motion is DENIED.

_____
UNITED STATES DISTRICT COURT JUDGE

copies to:

Jean W. Sexton, Esq.
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530

Douglas Wood, Esq.
Roberts & Wood
6801 Kenilworth Avenue
Berkshire Building, Suite 202
Riverdale, MD 20737